IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

LAMAR C. THOMAS,

        Petitioner,

v.

DAVID ORTIZ,

        Respondent.

Civil Action
No. 18-1602 (RBK)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

    Petitioner, Lamar C. Thomas, is a federal prisoner currently incarcerated at FCI Schuylkill, in Minersville, Pennsylvania. He is proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. Respondent filed an Answer opposing relief (ECF No. 4). Additionally, before the Court are Petitioner's unopposed motions for an evidentiary hearing and to expand the record (ECF Nos. 6 & 7). For the reasons set forth below, the Court will grant in part the motion for an evidentiary hearing and hold the hearing after determining whether Petitioner qualifies for the appointment of counsel. The Court will also terminate Petitioner's motion to expand the record, pending resolution of the evidentiary hearing.

### I.     BACKGROUND

    This case arises from a disciplinary hearing during Petitioner's incarceration at FCI Schuylkill. In February of 2016, the prison issued an incident report charging Petitioner with possession of a hazardous tool, in violation of Bureau of Prisons Code 108. Earlier that year, officials recovered a number of cell phones at the prison. One of the phones contained several phone numbers from Petitioner's approved phone list, in addition to one phone number that was only on Petitioner's approved phone list, out of all of the inmate lists.

Initially, officials suspended the incident report pending referral to the Federal Bureau of Investigation ("FBI") for possible prosecution, but on February 17, 2016, the FBI determined that the incident did not meet the criteria for referral. Later that day, prison officials reissued the incident report to Petitioner and advised him of his rights.

At the conclusion of the investigation, prison officials referred the incident report to the Unit Disciplinary Committee ("UDC") for an initial hearing, and an officer again advised Petitioner of his rights. At the initial hearing on February 20, 2016, Petitioner declined to make a statement or call any witnesses, and the UDC referred the matter to Discipline Hearing Officer ("DHO") Kevin Bittenbender, "because the appropriate sanctions were not available at the UDC level for a Code 108 violation." (ECF No. 4, at 6). Petitioner then received notice of, and reviewed, his rights for the pending hearing, declined to list any witnesses, and waived his right to a staff representative.

The hearing before DHO Bittenbender took place on February 29, 2016, and the parties dispute the chain of the events that took place. The parties contest whether DHO Bittenbender asked Petitioner to sign for a monetary sanction, before starting the hearing. According to Petitioner, before DHO Bittenbender sat down, the officer "slid a document across the table." (ECF No. 1, at 11). In response to Petitioner's request to identify the document, DHO Bittenbender allegedly said "[i]t's for a monetary fine forfeiture and authorization to have $295.00 withdrawn from your account. It's part of the sanctions I'm giving you." (*Id*. at 12). Petitioner then stated, "I'm not going to sign that because we haven't even started the hearing yet." (*Id*.).

Thereafter, DHO Bittenbender again advised Petitioner of his rights. Petitioner stated that he understood those rights and waived his right to a staff representative, to call any witnesses, or

to make a statement at the hearing. In addition to the incident report and investigation, DHO Bittenbender considered the following:

> a photograph taken of the cell phone, dated January 15, 2016; the Chain of Custody Log, dated January 15, 2016; the BOP TRUVIEW Report, dated February 13, 2016 (indicating telephone numbers on Petitioner's list); a BOP TRUFONE Report, dated February 13, 2016, of monitored calls associated with telephone numbers found on the cell phone; and the forensic analysis report of the cell phone, dated February 11, 2016.

(ECF No. 4, at 7 (citing Ex. 8, § III)).

Ultimately, DHO Bittenbender concluded that the greater weight of the evidence supported a finding that Petitioner committed the act of possessing or introducing a hazardous tool, in violation of Code 108. (*Id.* (citing Ex. 8, § V)). Petitioner then received the sanctions of "90 days of disciplinary segregation; disallowance of 41 days of good conduct time; forfeiture of 471 days of good conduct time; and a 2-year loss of telephone, e-mail, and visiting privileges." (*Id.* (citing Ex. 8, § VI)). According to DHO Bittenbender, he imposed such sanctions because:

> possession of a cellular telephone is considered a threat to the security and orderly running of the institution and considered a hazardous tool due to the ability to make unmonitored telephone calls. This tool is described as a hand held portable telephone capable of transmitting messages undetected and unmonitored by staff. This poses a significant security concern since this device can be utilized to have contraband introduced as well as to arrange escapes.

(*Id.* (citing Ex. 8, § VII)).

Petitioner appealed DHO Bittenbender's decision to the Bureau of Prison's Northeast Regional Office and then to the Central Office, arguing that DHO Bittenbender was biased and that the sanctions were too severe. At each level of appeal, the Regional Director and Administrator respectively found that DHO Bittenbender based his decision on the weight of the evidence and that the sanctions were not disproportionate to Petitioner's misconduct. Neither

3

decision, however, directly addressed the allegation that DHO Bittenbender prejudged Petitioner prior to the hearing, stating only that the proceedings complied with Petitioner's due process rights. (ECF No. 4-2, at 8, 11).

Petitioner then filed the instant Petition, again arguing that DHO Bittenbender was biased and that DHO Bittenbender imposed unduly severe sanctions. Respondent filed an Answer (ECF No. 4), and Petitioner filed a Reply (ECF No. 5). Petitioner also filed a motion for an evidentiary hearing and a motion to expand the record. (ECF Nos. 6 & 7).

## II. STANDARD OF REVIEW & JURISDICTION

Courts hold *pro se* pleadings to less stringent standards than more formal pleadings drafted by lawyers. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Courts must construe *pro se* habeas petitions and any supporting submissions liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir. 1998); *Lewis v. Attorney General,* 878 F.2d 714, 722 (3d Cir. 1989).

If the Court does not dismiss the petition at the screening stage, the Court "must review the answer, any transcripts and records . . . to determine whether an evidentiary hearing is warranted." Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts (made applicable to proceedings under § 2241 by Rule 1(b)). "Whether to order a hearing is within the sound discretion of the trial court," and depends on whether the hearing "would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000); *States v. Friedland*, 879 F. Supp. 420, 434 (D.N.J. 1995) (applying the § 2255 hearing standard to a § 2241 petition), *aff'd*, 83 F.3d 1531 (3d Cir. 1996).

Where a petitioner fails to identify evidence outside the record that would support or "otherwise . . . explain how his claim would be advanced by an evidentiary hearing," a court is within its discretion to deny an evidentiary hearing. *Campbell*, 209 F.3d at 287. In exercising that

4

discretion, a court must accept the truth of the petitioner's factual allegations unless the record shows that they are clearly frivolous. *Friedland*, 879 F. Supp. at 434; *c.f. United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015).

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." *Lee v. Stickman,* 357 F.3d 338, 342 (3d Cir. 2004) (quoting *Maleng v. Cook,* 490 U.S. 488, 490–91 (1989)).

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on constitutional grounds and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons,* 432 F.3d 235, 242–44 (3d Cir. 2005).

### III. DISCUSSION

Petitioner argues that the disciplinary hearing officer who presided over his case was biased against Petitioner, which deprived him of due process. Additionally, Petitioner maintains that, among other sanctions, the loss of 471 days of good conduct time was an "arbitrary and extreme sanction," for possession of a cell phone (ECF No. 5, at 2). In response, Respondent contends that Petitioner received all the required due process protections and an impartial hearing, and that in any event there is "no prejudice" because Petitioner later confessed on appeal. (ECF No. 4, at 9). Respondent also maintains that Petitioner's sanctions were not excessive, as they were "within the range of sanctions available under applicable regulations." (*Id*. at 16).

Under our jurisprudence, before an inmate may lose good time credits, officials must afford a prisoner the following due process protections: (1) a written notice of the charges at least twenty-four hours prior to a hearing; (2) an opportunity to call witnesses and present evidence in his

5

defense; (3) an opportunity to receive assistance from an inmate representative; (4) a written statement of the evidence relied on and the reasons for the disciplinary action; and (5) an appearance before an impartial decision making body. *See Crosby v. Piazza,* 465 F. App'x 168, 171–72 (3d Cir. 2012) (per curiam) (citing *Wolff v. McDonnell,* 418 U.S. 539, 563–71 (1974)).

In the present case, Petitioner only contends that he did not have the opportunity to appear before an impartial decision maker. He argues that when he "initially entered the DHO proceeding, he was immediately asked to sign a forfeiture document for a monetary sanction of $295.00." (ECF No. 1, at 3–4, 8). The implication then, according to Petitioner, is that DHO Bittenbender "already possessed a preconceived notion of guilt upon [Petitioner]." (*Id*. at 8).

In response, Respondent submits the declaration of DHO Bittenbender, who attests, that as a *general matter*, he does not "pre-fill or distribute monetary sanction forms prior to any of [his] DHO hearings," does "not formulate any decisions prior to conducting a full hearing," and does not "formulate any sanctions prior to the hearing." (ECF No. 4, at 12 (citing Bittenbender Decl., at ¶¶ 3–4)). DHO Bittenbender further attests that if he finds an inmate guilty and decides to impose a fine, he would provide a "money withdrawal form to the inmate after the conclusion of the hearing." (*Id*. (citing Bittenbender Decl., at ¶ 4)).

As an initial matter, these statements, while attesting to DHO Bittenbender's general practices, do not directly contradict the factual allegations in Petitioner's papers. Indeed, DHO Bittenbender states that he "d[oes] not specifically recall the Petitioner or his hearing." (ECF No. 4-3, at ¶ 3). Stated differently, a declaration of general practices does not directly conflict with the allegation that DHO Bittenbender provided Petitioner with a monetary sanction form before starting the hearing on February 29, 2016.

6

Even if there were a direct conflict, the Court must accept the truth of Petitioner's factual allegations at this stage, as the record fails to show that the allegations are "clearly frivolous." *Friedland*, 879 F. Supp. at 434; *c.f., Tolliver*, 800 F.3d at 141. Consequently, in considering whether to hold an evidentiary hearing, the Court must assume that DHO Bittenbender provided Petitioner with the sanction form and stated, "it's part of the sanctions I'm giving you," before starting the hearing. If Petitioner proves these allegations at an evidentiary hearing, they would lead to the conclusion that DHO Bittenbender had predetermined[1] Petitioner's guilt, and that Petitioner did not "appear[] before an impartial decision making body." *See Crosby,* 465 F. App'x at 172.

In turn, because a determination on these disputed facts "have the potential to advance" Petitioner's due process claim, the Court will order an evidentiary hearing to address this claim. *Campbell*, 209 F.3d at 287; *Friedland*, 879 F. Supp. at 434. Additionally, since a resolution of Petitioner's due process claim may moot his excessive sanctions claim, the Court declines to consider Petitioner's excessive sanctions claim at this time.

Finally, as the Court intends to grant Petitioner an evidentiary hearing on his due process claim, the Court must appoint him counsel pursuant Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts (applicable to proceedings under § 2241 through Rule 1(b)), if Petitioner qualifies for the appointment of counsel under 18 U.S.C. § 3006A.

---

[1] To the extent that Respondent argues that even if the hearing was biased "there was no resulting prejudice to Petitioner" because Petitioner later admitted to owning the cell phone, the Court rejects that argument. The potential prejudice was the deprivation of due process itself. Petitioner's allegations, if true, would show that he received his sanction first and judgment afterward, and thus, did not appear "before an impartial decision making body." *See Crosby*, 465 F. App'x at 172 (citing *Wolff*, 418 U.S. at 563–71). Whatever practical effect such an incriminating statement may have on any potential subsequent hearing, however, is not a question before the Court.

Pursuant to § 3006A, the Court must determine whether Petitioner is financially unable to obtain adequate representation. Petitioner, however, paid the filing fee and did not seek leave to proceed *in forma pauperis*. In turn, the Court cannot determine whether Petitioner is indigent on the existing record. Accordingly, prior to scheduling an evidentiary hearing in this matter, the Court will direct Petitioner to submit an application to proceed *in forma pauperis*.

## IV. CONCLUSION

For the foregoing reasons, Court will grant in part Petitioner's motion for an evidentiary hearing (ECF No. 7) and hold a hearing after determining whether Petitioner qualifies for the appointment of counsel. The Court will direct the Clerk of the Court to send Petitioner a blank application to proceed *in forma pauperis*, and to terminate Petitioner's motion to expand the record (ECF No. 6), pending the resolution of the evidentiary hearing. An appropriate order follows.

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge

Dated: February 27, 2019